99  177
†108 531
108  533

R. F. YOUNG, Administrator of the Estate of ELIZA LAING, Deceased, v. WILLIAM SCOVILLE, Appellant.

**Partnership:** DISSOLUTION BY DEATH. Where, on the death of one partner, the surviving partner continues the business just as he had done before her death, no steps being taken to wind up the business or ascertain the share of the deceased, and it is impossible to determine with accuracy the condition of the firm at the time of the partner's death, the surviving partner can not object to an accounting as if the partnership had continued to the time at which the representatives of the deceased partner began an action for an accounting.

*Equity.* A court of equity may, in furtherance of justice in an action by the representative of a deceased partner against the survivor for an accounting, treat the partnership as a continuing one, and settle it as if there had been no dissolution, and such power is properly exercised where, after the death of a female partner her husband and the survivor continue the business of the firm just as they had done before her death.

COMPENSATION: *Services of survivors.* There can be no allowance for labor or services performed for the partnership to either partner or to the husband of one of the partners who performed labor for the firm as her contribution thereto, in the absence of an express or implied agreement for compensation.

*Same.* A surviving partner, if so entitled in any case, is not entitled to compensation for closing up the business, his services having been originally rendered under an agreement that they should be offset by the services of the husband of the deceased partner.

**Report of Referee:** CONSTRUCTION OF STATUTE. A report of a referee sufficiently complies with the requirement of the statute, that the facts found and the conclusions of law shall be separately stated, where it is easy to separate the facts found from the conclusions of law, and the court, if it disapproves of the conclusions of law, can from the facts found, render such a judgment as correct rules of law would require, although the report is not paragraphed or arranged under appropriate sub-divisions.

**Appeal:** CERTIFICATE FOR TRIAL DE NOVO: *Court and referee.* The certificate contemplated by Code, section 2742, providing that all the evidence taken in an equitable action shall be certified by the judge at any time within the time allowed for an appeal, and be made a part of the record, and go on appeal to the supreme

court, which shall try the case anew—as the certificate of the judge, and a certificate by the referee to whom the case was referred is not sufficient.

*Appeal from Polk District Court.*—HON. S. F. BALLIET, Judge.

THURSDAY, OCTOBER 15, 1896.

SUIT in equity, in which the plaintiff, as the administrator of the estate of Eliza Laing, deceased, seeks an accounting from the defendant, alleging that his intestate and Scoville were partners in the plumbing and gas-fitting business prior to and at the time of her death; that since her death the defendant has continued the business of the firm; that he has not made, and refuses to make, an accounting to plaintiff, and refuses to permit him to examine the books, and refuses to make any settlement of the firm business. The answer is, in effect, a denial of the averments of the petition, and contains allegations to the effect that defendant and one James Laing were partners in the business. It also presents a showing of the condition of the firm business, and asks for certain affirmative relief in the event Eliza Laing shall be found to be a member of the firm. On application of plaintiff, a receiver was appointed, and the case was sent to a referee, who made a report, to which exceptions were taken, and motions filed in the court to which the referee reported. These exceptions and motions were overruled, and an order was passed confirming the referee's report, and giving the plaintiff judgment for the sum of three thousand nine hundred and eight dollars and sixty-eight cents, and defendant appeals.— *Affirmed.*

*C. C. Cole* for appellant.

*Bishop, Bowen & Fleming* for appellee.

Deemer, J.—This cause was submitted at the January, 1895, term of this court, and an opinion was filed May 29, 1895, affirming the decree of the lower court. (63 N. W. Rep. 607.) A rehearing was granted at the October, 1895, term, and the case has again been submitted on additional arguments from counsel on either side. We held, in the opinion first filed, that a motion presented by appellee to strike the evidence from the abstract should be sustained. A careful reconsideration of the point leads us to the conclusion that the ruling should be adhered to.

The evidence upon which the cause was submitted was not certified to by the trial judge. The referee, to whom the case was referred, made a certificate to the evidence which was offered and introduced upon the trial before him, and it is argued by counsel for appellant, that this certificate is sufficient. The question seems to be ruled by the case of *Porter v. Everett*, 66 Iowa, 278 (23 N. W. Rep. 668), wherein it is said, in construing section 2742 of the Code: "It appears to us, that the section of the Code referred to, is a positive and peremptory requirement, and that the certificate must be signed by the judge." Appellant's counsel contend, that this declaration of the court was merely *dictum*, and that the construction placed upon the statute referred to, was wrong. That section, so far as material, is as follows: "In equitable actions, where an issue of facts is joined, all evidence offered in the trial shall be taken down in writing. * * * All of the evidence so taken shall be certified by the judge at any time within the time allowed for an appeal of said cause, and be made a part of the record, and go on appeal to the supreme

court, which shall try the case anew." Referring again to the *Porter Case, supra,* we find that the inquiry as to who must certify to the evidence in equity cases tried before a referee, was directly involved, and squarely decided. It is true, however, that we said in that case, that the certificate made by the referee did not properly identify the evidence adduced before him, and the case might have been decided on that proposition alone. Yet we did not content ourselves with such a decision, but placed the ruling upon both grounds. These facts may weaken the case as an authority, but to adopt the rule contended for by appellant would, in effect, overrule the decision there made. That we should not do so unless we are clearly satisfied it is wrong, should be conceded, for it is important to the profession and to litigants that we be certain and consistent in such matters. Appellant insists that the section of the Code quoted has no application to trials before referees, and hence dual certificates are not required. He also contends that the referee stands for and in the place of the court, and that his certificate is the certificate of the court, within the meaning of the statute quoted; and that by virtue of the provisions of section 2830 of the Code, the referee in every incident of the proceedings before him, the rights and responsibilities of the parties, and of their attorneys, and of the referee, shall be the same as if the referee was the court engaged in the same matter. There would be much force in these positions if an appeal could be taken directly from the findings and conclusions of the referee, but this is not claimed. It is, and must be, conceded that the appeal is from the judgment and decree of the district court, and from its orders and rulings on the objections and motions filed to the referee's report. The statute clearly and in unmistakable terms says that the evidence in equitable actions

must be certified by the trial judge, and that the case must be tried anew upon appeal to this court; that is to say, we must try the case and decide it as the lower court should have done on the record before it, and this record must be properly identified by the judge who tried the case. When an equity case is sent to a referee, there are, in effect, two trials,—one before the referee and the other before the district court; and an appeal, when taken, is not directly from the decision of the referee, but from the decision of the district court. In order to try the questions presented to it anew, we must have all the evidence offered or introduced before the district court, properly certified by the judge who tried the case. The referee cannot make this certificate, for he does not know what transpired before the judge who finally decides the controversy. His certificate relates only to that which was offered before him, and is for no other purpose than to identify the evidence upon which he acted. We have held that the referee is not the court, *Hobart v. Hobart*, 45 Iowa, 501; *Belzor v. Logan*, 32 Iowa, 322; that the power of the court in acting upon the report of a referee is not merely appellate, *Edwards v. Cottrell*, 43 Iowa, 194; *Hodgin v. Toler*, 70 Iowa, 21 (30 N. W. Rep. 1); and that, to secure a review of the findings and conclusions of a referee in a law action, exceptions must be taken to the rulings of the district court thereon, and that exceptions taken before the referee are not sufficient, *Roberts v. Cass*, 27 Iowa, 225; *Bolton v. Kitsman* 80 Iowa, 343 (45 N. W. Rep. 876); *Michael v. Longman*, 42 Iowa, 484. Such holdings clearly indicate that where there is a reference there are, in effect, two trials, and that when an appeal is taken it is from the order and judgment of the trial court, and not from the conclusions of the referee. Such being the case, it is clear that a certificate from the trial judge is necessary to identify the evidence upon which

he acted. See *Teague v. Fortsch*, 98 Iowa, 92 (66 N. W. Rep. 1056). This case is an illustration of the efficacy of the rule announced. Appellee, in his amended abstract, says that, upon the final hearing of the case before the lower court, other testimony was offered and introduced, which has never been made a matter of record by reporter's notes or otherwise. True, appellant denies this statement, but how are we to decide this dispute without a certificate from the trial judge identifying the evidence upon which the cause was heard before him? We are content with the rule announced in the *Porter Case*, and conclude that appellee's motion to strike the evidence should be sustained.

II. In the opinion first filed we held that the assignments of error found of record in the case were filed too late, and they were stricken. In reconsidering the case we have concluded, in view of the results reached, to withdraw that part of the original opinion, and treat the case as if the assignments were made in proper time. By so doing we do not wish to be understood as either affirming, or denying, the rule heretofore announced. If a decision of the question was necessary, we might not be agreed, and we prefer to treat the case as if the assignments were timely, as no prejudice can result to either party from so doing. As the evidence is all eliminated from the record, we may only consider those questions made by the errors assigned which can be decided without looking to the evidence adduced. The first point made by the appellant is that the referee's report should be set aside because he did not state the facts found and conclusions of law separately. The statute with reference to this subject requires that he do so. We do not understand from this, however, that the report should be in any particular form. It is not essential to its validity that it be paragraphed,

or arranged under appropriate sub-divisions. While such a report would probably be more artistic, more pleasing to the eye, and more easy of review, yet no stereotyped form is required. All that is needed is that the facts found and the conclusions of law be stated separately at some place in the report, and that they be not so blended as to render it impossible to distinguish one from the other. In this case all the ultimate and essential facts were found by the referee. He also stated his conclusions of law applicable thereto, and finally recommended a certain judgment, which he thought would do justice between the parties. It is an easy task to separate the facts found from the conclusions of law, and the court, if it had been so disposed, could have disapproved of the conclusions of law, and from the facts found have rendered such judgment as correct rules of law would require. When a report is in this condition, it sufficiently meets the requirements of the statute.

The referee found that E. Laing and William Scoville were partners in the plumbing business, as alleged by plaintiff in his petition; that this partnership continued until the death of E. Laing, which occurred on the twenty-seventh day of September, 1887; that James Laing, the husband of plaintiff's intestate, was a practical plumber, and acted for his wife in doing the practical part of the business carried on by the firm; that Scoville did the office work, kept the books, etc.; that neither Laing nor Scoville claimed or received any salary for their services until after the commencement of this suit, and that it was understood, and in effect, agreed upon, between them, that neither should receive any salary or compensation; that the services of one should be offset against those of the other; that at the death of Eliza Laing no sale of the assets of the firm was had, no steps taken to wind up the business, and no inventory made of the

firm property, but that the business of the firm continued just as it had before the death of Mrs. Laing, no change being made in the management of the business; that James Laing continued doing the practical part of the work and William Scoville the office work, just as before; that it was impossible to determine, with any degree of accuracy, the financial condition of the firm at the time of the death of E. Laing, but that from the best data he could obtain, the assets were ten thousand three hundred and six dollars and twenty-two cents, and the liabilities eight thousand five hundred and eighty-eight dollars and thirteen cents. The referee further found the value of Scoville's services from December 1, 1886, to September 27, 1887, to be one hundred dollars per month, and their value after the death of Mrs. Laing, up to the time of the beginning of this suit, to be one thousand eight hundred dollars per year. He also found that after the formation of the firm Scoville put into the business seven hundred and thirty-eight dollars and fifty-six cents in excess of the sum put in by Eliza Laing. Upon the assumption that the business continued down to the time of the commencement of this suit, and that plaintiff was entitled to a dissolution of the firm, and an accounting as of that date, the referee then proceeded to state the account between the parties, and concluded by finding that the plaintiff was entitled to receive of the assets of the firm the sum of four thousand seven hundred and forty-one dollars and eighteen cents, and that defendant was entitled to three thousand one hundred and twenty-three dollars and sixty-seven cents thereof. As conclusion of law, the referee found that Eliza Laing was a member of the firm, as alleged in the petition; that the firm was dissolved by the death of Eliza Laing on September 27, 1887, but that the business of the firm was continued down to the beginning of this suit as a continuing partnership business;

that the death of Mrs. Laing made no difference or change in the business or management thereof, and that her death was treated and was recognized as having no effect upon the rights of the parties; and that as a matter of justice and equity in the settlement of the affairs of the firm it should be settled as a continuing partnership, and as though Mrs. Laing were living at the time the accounting was made. It is said in argument that the finding of the referee that there was a partnership is not supported by the evidence. For reasons already stated, we cannot consider this question. It is also said that the death of Mrs. Laing dissolved the partnership absolutely, entirely, and forever. This is what the referee found in his report, but he also concluded that under the circumstances shown, the accounting should be had as if the partnership continued down to the time of the commencement of this suit. The correctness of this last proposition we will have occasion to consider hereafter. It is further argued by appellant that the surviving partner had a right to a continuance of the business in the partnership name. This is, no doubt, true, but the referee made no finding to the contrary. Appellant had the undoubted and undisputed right of closing up the firm business after the death of his partner, and could thereafter have continued the business in the firm name. But the referee found that he did not do so. It appears from the findings of fact that appellant and James Laing continued the business of the firm in the same manner as it had been done prior to the death of Mrs. Laing. No steps were taken to wind up the business, and nothing was done for the purpose of ascertaining the interest that Eliza Laing had in it at the time of her death. The right of the reprentative of Mrs. Laing to take interest upon the amount found due her from the partnership at the time of her death, or, at

his election, to take a proportion of the profits made from the use of her part of the investment in the business, is conceded. But appellant contends that: "When, if ever, the right of the representative exists to elect to take profits instead of interest, such profits are limited to the proportion or share which is derived from the capital or amount of money that the deceased had in the business at the time of her death." We may admit that this is the rule sometimes applied, and may go further, for the purposes of this case, and say that under ordinary circumstances it is the rule generally adopted. But it is not always so. There are some cases where such a rule would work manifest injustice. Consequently it has in many cases been held that the representative of a deceased partner may have the partnership settled, and an accounting had as of a date later than the death of his intestate; that to accomplish justice the partnership will be treated as a continuing one, and is to be settled as if there had been no dissolution. Of necessity much depends upon the circumstances of the particular case, and no general rule can be adopted which will fit every controversy of the kind. A court of equity will undertake in this kind of a case to do justice without reference to any settled, fixed, and inflexible rule. Parsons Partn. (4th Ed.) section 415. See Lindley Partn. (Ewell's Ed.) *981, *1046; Story, Partn. section 343; *Taylor v. Hutchison*, 25 Gratton 544; *Phillips v. Prior*, 18 N. J. Eq. 99; *Robinson v. Simmons*, 146 Mass. 167 (15 N. E. Rep. 558), and cases therein cited. According to the facts found by the referee, the parties continued the business of the firm after the death of Mrs. Laing just as they had done before her demise. No change whatever was made by reason of her death, and it seems to us entirely just and equitable to hold, under such circumstances, that the affairs of the partnership should be

closed as if she had lived, and were now asking the dissolution of the firm, and the settlement of its business. Appellant has no right to complain of this, for, if he had been so advised, he could have closed up the affairs of the partnership immediately upon the death of Mrs. Laing. As he did not do so, but elected to treat the partnership as continuing, he should be held to account as if it did, in fact, continue. Another potent reason for adopting this rule, is found in the fact that the referee reported that it was impossible to determine with any degree of accuracy the financial condition of the firm at the time of the death of Mrs. Laing. We see no error in the rule adopted by the referee as a basis for the accounting.

Again, it is contended that the referee and the court were in error in not allowing Scoville compensation for his services in connection with the business after the death of Mrs. Laing. It seems to us that this contention is determined by the rule last above named. If the partnership, for the purpose of stating the account between the parties, is to be deemed a continuing one, then it is to be treated as if there was in fact no dissolution by death. If this be true, then neither James Laing nor William Scoville can claim anything for their services, as the labor of one was to offset that of the other. It is argued, however, that, as James Laing is not a party to this suit, he is not bound by such rule, and that, if he may in some subsequent suit recover for his services, appellant ought to be allowed for his time and labor. Sufficient it is to say in answer to this argument that we do not think the premises are correct. James Laing and his representative (she now being dead) are clearly estopped from claiming anything for his services rendered to the firm after the death of his wife. There are no facts found by the referee from which an agreement to compensate the appellant for

services performed can justly or fairly be inferred; and without any agreement, express or implied, there can be no allowance to either party for labor and services performed for the partnership. *Morris v. Griffin*, 83 Iowa, 327 (49 N. W. Rep. 846); *Levi v. Karrick*, 13 Iowa, 344; *Boardman v. Close*, 44 Iowa, 428. It is said, however, that appellant was entitled to compensation as surviving partner for closing up the business. This proposition may well be doubted. *Starr v. Case*, 59 Iowa, 491 (13 N. W. Rep. 645); Bates, Partn. section 772, and authorities cited. But, concede that it is correct, it is not applicable to this case, for the reason that Scoville did not, as surviving partner, proceed to wind up the business. On the contrary, he continued it under an arrangement with James Laing, the same as if there had been no dissolution, and there was an implied understanding, at least, that each should offset his services as against the other. Under such circumstances it is clear that no compensation should be allowed to either. Bates, Partn. section 774.

Other questions are argued by counsel, some of which we cannot consider on account of the condition of the record. The remaider are disposed of by what we have already said.—AFFIRMED.