HAMILTON BUGGY COMPANY, Appellee, v. IOWA BUGGY COMPANY, Appellee; WESTERN MINING COMPANY, Intervenor, Appellant.

1. **Practice on Appeal:** ASSIGNMENT OF ERRORS: SUFFICIENCY. An assignment of error relating to the admission of evidence against objection is sufficient when it points out the error, names the witness, and specifies the evidence and rulings objected to; but an assignment which merely states that the court erred in overruling a motion to direct a verdict is insufficient, where the motion is based

upon several distinct grounds, and the assignment fails to point out the particular ground or grounds of error complained of; and the assignments "The verdict is contrary to law," and "The court erred in rendering judgment upon the verdict," are too general, in not pointing out the specific points in which the court erred.

2. **Fraud**: EVIDENCE: CONTEMPORANEOUS TRANSACTIONS.   Where part of the minute book of a corporation was introduced in evidence for the purpose of showing the order of the directors for the assignment of certain accounts in controversy, *held*, that while it was not competent on cross-examination to introduce other portions of said minute book relating to the assignment of certain notes and accounts to other creditors, on the ground that it was a part of the same record, such other parts were admissible as showing contemporaneous transactions of a like kind, and as bearing upon the good faith of the assignment in question.

3. ———: ———: BUSINESS RELATION OF PARTIES.   Where the assignment of property by one corporation to another is assailed as fraudulent, it is competent to inquire into the identity of the officers and stockholders in the two companies, and their relationships and common interests.

4. ———: ———: BOOKS OF ACCOUNT.   While the entries in the books of a corporation are not evidence as against strangers, yet where there was evidence that the defendant and the intervenor used the same books, and that the intervenor owned the defendant, *held*, that there was no error in permitting the books to be introduced as against the intervenor, though they were designated as the defendant's books.

5. ———: ———: DECLARATIONS OF ONE CORPORATION BINDING UPON ANOTHER.   Where there was evidence tending to show that the defendant corporation was owned and operated by the intervenor company, *held*, that there was no error in permitting the plaintiff to show the declarations of the defendant's president as against the intervenor.

6. **Instructions to Jury**: CONTRADICTION: PREJUDICE.   Where the court in one instruction told the jury that the intervenor must establish all the material averments of its petition, and, in another, that it was admitted that the intervenor was a duly incorporated company, *held*, that there was no contradiction which could have misled or confused the jury.

7. ———: PALPABLE TYPOGRAPHICAL ERROR: WORDS SUPPLIED.   Where it sufficiently appears that in printing the record the word "not" was by mistake omitted from an instruction, and the instruction, with that word supplied, is not erroneous, it is no ground for reversal.

8. ———: REASONABLENESS OF COMPENSATION TO OFFICERS: EVIDENCE TO SUPPORT. Evidence that the compensation voted to the officers of a corporation covered a period of several months prior to its organization, is sufficient to justify the submission to the jury of the question of the reasonableness of such compensation.

9. Practice: INTRODUCTION OF EVIDENCE PENDING ARGUMENT. And where evidence was offered five days after the testimony had closed, and after the argument was well advanced, and no showing of the relevancy of the evidence offered was made, and no excuse for the delay in offering it, held, that the action of the trial court in refusing to receive it could not be reviewed.

10. Verdict: EVIDENCE TO SUPPORT ON APPEAL. The question whether the verdict is supported by the evidence can not be considered in this court when the evidence is conflicting.

11. Garnishment: JURISDICTION: VOLUNTARY APPEARANCE OF PRINCIPAL DEFENDANT. Where the principal defendant in a garnishment proceeding voluntarily appears in the case, the court has full jurisdiction to try the issues in which he is interested, without the service upon him of the notice required by section 2975 of the Code.

*Appeal from Polk District Court.*—HON. S. F. BALLIET, Judge.

SATURDAY, MAY 20, 1893.

ACTION by attachment wherein one Cook was garnished as a debtor of the defendant, the Iowa Buggy Company. The Western Mining and Investment Company intervened, claiming to be the owner of the defendant's claim against Cook under an assignment made prior to the attachment. The plaintiff alleged that said assignment was fraudulent. There was a verdict and judgment for the plaintiff, and the intervenor appeals. The facts are stated in the opinion.—*Affirmed.*

*Earle & Prouty*, for intervenor, appellant.

*Park & Odell*, for plaintiff, appellee.

*W. S. Sickmon*, for garnishee, appellee.

KINNE, J.—The plaintiff commenced an action by attachment against the defendant, claiming about two thousand, eight hundred dollars, and on October 25, 1890, caused one Cook to be garnished therein. December 20, 1890, Cook answered as garnishee, denying any indebtedness to the defendant, and averring that he had been indebted to the defendant in October, 1890, about one thousand, eight hundred dollars; that on October 10, 1890, he received from the defendant a written notice of the assignment of said debt to the intervenor. January 7, 1891, the Western Mining & Investment Company filed a petition of intervention, claiming the account or property in the garnishee's hands. On January 10, 1891, the plaintiff filed its answer to the petition of intervention, denying the intervenor's ownership of the indebtedness, and averring that the transfer of it to the intervenor was without consideration, fraudulent, and void. June 6, 1891, judgment was rendered in the main action against the defendant. The cause, as to the issues joined between the plaintiff and the intervenor, was tried to a jury, and a verdict and judgment rendered for the plaintiff, from which the intervenor appeals.

I. The plaintiff insists that the first, second, third, fourth, and sixth assignments of error are not suffi-

1. PRACTICE on appeal: ass'g ment of errors: sufficiency.

ciently specific. Each and all of these assignments relate to the admission of evidence against the objection of the intervenor, and each assignment sufficiently points out the error, naming the witness, and specifying the evidence and rulings objected to. To require more would entail an unnecessary burden upon the appellants. While the law contemplates that such assignments shall clearly point out the error complained of, it is not necessary to incumber the record by setting out the whole examination in which the error is claimed to

have occurred. *Union Building Association v. Rockford Ins. Co.*, 83 Iowa, 647.

It is urged that the thirteenth assignment of error is insufficient. It reads: "The court erred in overruling intervenor's motion to direct a verdict for intervenor." The motion referred to contains twelve distinct grounds. The assignment of error is insufficient in not pointing out the particular ground, or grounds, of error complained of. *Betts v. City of Glenwood*, 52¦ Iowa, 126. The same objection is made to the sixteenth and seventeenth assignments, which are substantially in the same form, and for the reason last stated can not be considered.

The following assignments of error are assailed as being too indefinite: "20. The verdict is contrary to law." "23. The court erred in rendering judgment upon the verdict." These assignments are too general. They do not point out or suggest wherein the verdict is contrary to law, or wherein the entry of judgment was error. *Brigham v. Retelsdorf*, 73 Iowa, 714; *Vanderberg v. Camp*, 68 Iowa, 212; *Betts v. City of Glenwood*, 52 Iowa, 126; *Tomblin v. Ball*, 46 Iowa, 190.

II. H. B. Cunningham, a witness for the intervenor, identified the minute book of the defendant

2. FRAUD: evidence: contemporaneous transactions.

company, whereupon the intervenor introduced in evidence that part of page 11 of said book which showed the action of the board of directors of the defendant ordering the assignment of accounts to the intervenor, to pay notes held by it against the defendant. On cross-examination the plaintiff, against the intervenor's objection, was permitted to read in evidence the remainder of the minutes of said meeting of the defendant. They related to the assignment of certain notes and accounts to other creditors of the company; also to the fixing and payment of the salaries of the defendant's officers. The plaintiff contends that this, being a part of the

same record, was admissible, under section 3650 of the Code. Clearly, this evidence was not admissible under the provisions of the section quoted. It did not relate to the same subject, but it did relate to acts of the defendant which took place at the same time the transfer of the accounts was made. It was proper to show that, at the time the intervenor claimed that the defendant assigned the account to it, the defendant was engaged in disposing of its other property. True, the facts shown might not, of themselves, show fraud, but were proper to be taken into consideration with all other facts and circumstances in determining the intent with which the defendant acted in its transfer of the accounts of the intervenor. Of course, to bind the intervenor by such transactions, even if fraudulent on the part of defendant, it must be made to appear that the intervenor was a party to the fraud. Again, the manner in which these two corporations had conducted their business, as hereinafter referred to, warranted great latitude in the admission of such testimony.

III. The plaintiff called as a witness J. T. James, president of the defendant, and examined him as to who constituted the stockholders of said

8. ——: ——: business relation of parties.

company, who were officers of the intervenor, their residence, and relationship to the stockholders and officers of the defendant. It is urged that this was error. Some of the facts touching the stock of the defendant were also testified to by the witness Leiser, and, while error is assigned on the admission of his evidence, it is not argued. Other facts sworn to by James were established by the books of the defendant, which we, for reasons hereafter stated, hold were properly admitted. Again, much latitude is allowed in the examination of witnesses in cases where fraud is the subject of the inquiry. The relationship of the officers of the defendant and the

intervenor was clearly within the reasonable limits of the investigation in such a case, and was a proper matter to be shown.   The fact that the witness was president of the defendant company, and at the same time secretary of the intervenor, might be material, in connection with other facts and circumstances, in tending to show that the transaction in controversy was fraudulent.

IV.   It is urged that the court erred in admitting in evidence the books of the defendant, and also of 4. —:—: books of account. the accounts of James and Cunningham therein, who were officers of the defendant. It is claimed that the intervenor is a stranger to the transactions of the defendant, and hence can not be bound by any entries that may be found in its books. The law undoubtedly is that the entries in the books of a company are not evidence as against strangers.   The evidence shows that the defendant and the intervenor used the same books.   Witness Leiser testifies:   "I think the Western Mining & Investment Company owned the Iowa Buggy Company.   Mr. James was then manager.   It was doing business at that time under the name of the Iowa Buggy Company.   I do not know how long the Western Mining & Investment Company did business as the Iowa Buggy Company. These books do not show.   There are no books that I know of that would show.   I kept these books for the Iowa Buggy Company while they were doing business under that name.   They are the only books I kept for the company."   From the evidence before us it is impossible to say when the career of one corporation ended, and the other began its operations.   It can not, with any degree of certainty, be said that the intervenor was a stranger to the entries in these books, and hence we can not say that the court erred in admitting them.

V.   Counsel urge that the court erred in admitting
in evidence the letter of James to the plaintiff, his

5. ——: ——:    statement therein, as well as other state-
declarations
of one corpo-    ments made by him.    Counsel say:
ration binding
upon another.    "These were matters occurring long prior
to the transfer to the intervenor, and even before the
debt to the intervenor was created." True, they
occurred prior to the transfer of the account, but coun-
sel are mistaken in saying that at that time the indebt-
edness to them did not exist.    The letter was written
February 10, 1890, and, so far as appears, the state-
ments were made about the same time.    The notes
given by the defendant to the intervenor are dated in
October and November, 1889.    Ordinarily, it may be
true, as the intervenor contends, that the statement
made by James, as president of the defendant, in Feb-
ruary, 1890, to the plaintiff, as a basis for obtaining
credit of the plaintiff,—that of the six thousand, one
hundred dollars of the defendant's indebtedness, five
thousand, four hundred of it was owing to stockholders
of the defendant company,—would be inadmissible as
against the intervenor.    But the evidence in this case,
as disclosed by this record, if it is to be believed, tends
to show that the intervenor company was operating the
defendant company under the name of the Iowa Buggy
Company during the year 1889, until after the notes
were given to the intervenor, and, as we have said, it
is impossible to say from the evidence when one cor-
poration ceased to do business and the other began.
This being the case, it would seem that the evidence
objected to was properly admitted.    Whether, in the
absence of evidence tending to show that the intervenor
was running the business in the name of the defendant,
the evidence would be admissible, we need not deter-
mine.

VI.   It is insisted that the court erred in refusing
to give certain instructions asked by the intervenor.

The thirteenth instruction no doubt stated the law correctly; yet, in view of the evidence in this case, we think it was not error to refuse it in the form it was presented. Other instructions, and which were proper, were sufficiently covered by the charge of the court.

VII. It is said that the first and twelfth instructions given by the court are contradictory. In the first the court tells the jury that it is incumbent on the intervenor to establish the material averments of its petition, and in the twelfth that it is admitted that the intervenor was a duly incorporated company, and as to that fact no evidence was necessary, and they should accept it as an established fact. We do not think that the jury could have been misled. The effect of the two instructions was to direct the jury that, except as to allegations in the intervenor's petition which were admitted, it was incumbent on it to establish them.

6. INSTRUCTIONS to jury: contradiction: prejudice.

VIII. The sixth instruction is assailed as being inconsistent in announcing contradictory rules as to when fraud may be deemed to have been established. This objection is in part based upon what appears to be a typographical error in the omission of the word "not." Reading the whole instruction, we are justified in assuming that the word "not" was in the instruction as given by the court, but was by oversight omitted by the printer. While the instruction is not in the best form, yet as a whole it is quite favorable to the intervenor; certainly as much so as the law would permit. It ought not to complain, and the plaintiff can not.

7. ——: palpable typographical error: "not" supplied.

IX. It is said that the thirteenth paragraph of the court's charge is erroneous. It submitted to the jury the question of the reasonableness of the compensation voted by the defendant to its officers, and told them, if they found such sum so voted unreasonable, and

8. ——: reasonableness of compensation to officers: evidence to support.

voted when the defendant was insolvent, such facts should be considered in determining with what intent and purpose the assignment of the Cook claim was made. It is contended that there was no evidence as to the reasonableness of the compensation so voted. There was evidence that the compensation so voted covered a period of several months prior to the incorporation of the defendant. Under the evidence we think there was no error in this paragraph of the charge.

X. June 8, 1891, five days after the taking of evidence had been concluded, and after the intervenor's counsel had made their argument and the argument in behalf of the plaintiff had begun, the intervenor asked leave to introduce certain notes given to it by the defendant, and which were shown to have been paid October 9, 1890. The court refused to admit the evidence, and its action is assigned as error. The admission of evidence under such circumstances is a matter of discretion, and we should not be justified in interfering unless it clearly appeared that the district court had abused the discretion with which it is vested. There was no offer to show that the notes sought to be introduced were in fact the identical notes for which the account in controversy was transferred, except as that fact might be presumed from their dates and the indorsement of payment thereon. There was no reason given why the offer was not sooner made, or that it was impossible to do so. It was simply a naked request to be permitted to offer the notes in evidence five days after the taking of testimony had closed, and when the closing argument was being made, without assigning any reason therefor. Under such circumstances the court did not err in refusing the intervenor's request.

9. PRACTICE: introduction of evidence pending argument.

XI. It is urged that the verdict is against the evidence. The evidence was conflicting. There was much

**10. VERDICT: evidence to support on appeal.** evidence of facts and circumstances from which the jury might properly have found as they did. It will serve no useful purpose to consider it in detail. Fraud is rarely susceptible of direct proof. The evidence is ample to justify the verdict, and we can not interfere.

XII. Lastly, it is contended that the court had no jurisdiction to try the case as to the issues presented by **11. GARNISHMENT: jurisdiction: voluntary appearance of principal defendant.** the garnishment, because no notice had been served on the principal defendant, as required by section 2975 of the Code.

It appears that the principal defendant appeared in court, and thus rendered the service of the notice unnecessary. As the statute requiring notice to be served on the principal defendant is for his benefit and protection, it is clear that the defendant could waive its provisions by voluntarily appearing to the proceedings, as it did in this case. We have examined all the errors assigned, and discover no reversible error. AFFIRMED.